UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| In re: BLOCK ISLAND FISHING, INC., for Exoneration from or Limitation of Liability. | Civil Action No. 16-cv-10043-ADB |

# MEMORANDUM AND ORDER GRANTING MOTION FOR PROTECTIVE ORDER

BURROUGHS, D.J.

This case concerns a collision between a lobster fishing vessel, the F/V HEDY BRENNA, and a tanker, the BW GDF SUEZ BOSTON, on July 3, 2015. Block Island Fishing, Inc., which owns the F/V HEDY BRENNA, filed a complaint seeking exoneration or limitation of liability on January 12, 2016. [ECF No. 2]. Claimant Partrederiet BW Gas GDF Suez Emt Da ("Partrederiet") is the registered owner of BW GDF SUEZ BOSTON. [ECF No. 21 at 4]. Now before the Court is Partrederiet's Motion for a Protective Order [ECF No. 56] seeking to limit deposition testimony concerning Partrederiet's review and analysis of the collision based on the self-critical analysis privilege. For the reasons set forth below, the motion is granted.

### A. The Self-Critical Analysis Privilege

The self-critical analysis privilege is not yet clearly established in the First Circuit or elsewhere, but "a number of federal courts have recognized that self-critical analyses are generally privileged and not subject to discovery." Tice v. Am. Airlines, Inc., 192 F.R.D. 270, 272 (N.D. Ill. 2000) (citing cases); see also Coates v. Johnson & Johnson, 756 F.2d 524, 551 (7th Cir. 1985) (recognizing "prevailing view" that "self-critical portions of affirmative action plans are privileged and not subject to discovery"). Within the First Circuit, one district court has

applied the privilege to protect certain material from discovery, see O'Connor v. Chrysler Corp., 86 F.R.D. 211, 218 (D. Mass. 1980), while in other cases the court found that the privilege was inapplicable on the facts at issue, and thus did not reach the question of whether the privilege exists. See, e.g., Reyes-Santiago v. JetBlue Airways Corp., 932 F. Supp. 2d 291, 297 (D.P.R. 2013); Westernbank P.R. v. Kachkar, No. CV 07-1606 (ADC/BJM), 2009 WL 10681125, at *3 (D.P.R. Apr. 7, 2009); Whittingham v. Amherst Coll., 164 F.R.D. 124, 130 (D. Mass. 1995).

The self-critical analysis privilege, also known as the self-evaluative privilege, "is designed to protect the opinions and recommendations of corporate employees engaged in the process of critical self-evaluation of the company's policies for the purpose of improving health and safety." Felder v. Wash. Metro. Area Transit Auth., 153 F. Supp. 3d 221, 224–25 (D.D.C. 2015). "The privilege seeks to encourage candid self-criticism," and "'prevent[s] a 'chilling' effect on self-analysis and self-evaluation prepared for the purpose of protecting the public by instituting practices assuring safer operations.'" Id. at 225 (quoting Granger v. Nat'l R.R. Passenger Corp., 116 F.R.D. 507, 509 (E.D. Pa. 1987)). If these types of analyses were subject to disclosure, it would "almost inevitably . . . result in some cramping of the investigative process, simply because the incentives for any institution to engage in self-evaluative investigation pale considerably with the knowledge that the results may be used against it." O'Connor, 86 F.R.D. at 217–18. Thus, the "reasoning behind this approach is that the ultimate benefit to others from this critical analysis of the . . . [accident] far outweighs any benefits from disclosure." Bradley v. Melroe Co., 141 F.R.D. 1, 3 (D.D.C. 1992).[1]

---

[1] Some courts have interpreted a 1990 Supreme Court decision as casting doubt on the viability of the self-critical analysis privilege. See Univ. of Pennsylvania v. EEOC, 493 U.S. 182, 188–89 (1990). In that case, the court refused to recognize a peer-review privilege that would have protected materials concerning a university's tenure decisions where the EEOC was investigating charges of gender and racial discrimination. Id. at 185, 189. Some courts have described Pennsylvania as "implicitly reject[ing] the rationale for a self-evaluation privilege" because both

The O'Connor court identified four "potential guideposts" for the application of the self-critical analysis privilege:

> (1) materials protected have generally been those prepared for mandatory governmental reports; (2) only subjective, evaluative materials have been protected; (3) objective data in those same reports have not been protected; and (4) in sensitivity to plaintiffs' need for such materials, courts have denied discovery only where the policy favoring exclusion has clearly outweighed plaintiffs' need.

O'Connor, 86 F.R.D. at 217 (quoting Webb v. Westinghouse Elec. Corp., 81 F.R.D. 431, 434 (E.D. Pa. 1978)). In the years since O'Connor was decided, however, a different four-factor test appears to have been more frequently applied by district courts across the country. See 2 McLaughlin on Class Actions § 11:11 (14th ed.). That test, which is based in part on factors identified by the Ninth Circuit in Dowling v. Am. Haw. Cruises, Inc., 971 F.2d 423, 426 (9th Cir. 1992)), is as follows: (1) "the information must result from a critical self-analysis undertaken by the party seeking protection; (2) the public must have a strong interest in preserving the free flow of the type of information sought;" (3) "the information must be of the type whose flow would be curtailed if discovery were allowed;" and (4) the document at issue must have been "prepared with the expectation that it would be kept confidential." Reid v. Lockheed Martin Aeronautics Co., 199 F.R.D. 379, 386 (N.D. Ga. 2001) (quoting Dowling, 971 F.2d at 426).[2] The court in

---

privileges are based on the "assertion that candid appraisals of organizational management and personnel practices will be hindered to the detriment of the public interest if such information is subject to disclosure in litigation." Roberts v. Hunt, 187 F.R.D. 71, 75 (W.D.N.Y. 1999). The self-critical analysis privilege, however, is ordinarily only recognized where protecting an organization's self-analysis could further a specific, important public policy goal, such as implementing affirmative action programs or improving safety procedures. Thus, it is not apparent that Pennsylvania completely forecloses the existence of the privilege. See Abbott v. Harris Publ'ns, No. 97-cv-7648 (JSM), 1999 WL 549002, at *2 (S.D.N.Y. July 28, 1999) (explaining that, post-Pennsylvania, the party seeking to invoke the self-critical analysis privilege "bears a heavy burden of establishing that public policy strongly favors the type of [internal] review at issue and that disclosure in the course of discovery will have a substantial chilling effect on the willingness of parties to engage in such [internal] reviews").

[2] The U.S. District Court for the District of Columbia employs yet another test: "(1) the document must be a critique submitted as part of a mandatory government report; and (2) the

Tice explained that the first test, as employed in O'Connor, is used to determine whether reports in an employment discrimination case are protected by the privilege, while the second test, as described in Reid, is employed in personal injury or tort cases. Tice, 192 F.R.D. at 272–73. Other courts have not necessarily recognized that distinction, however. See Roberts v. Carrier Corp., 107 F.R.D. 678, 684 (N.D. Ind. 1985) (applying O'Connor factors in personal injury case); see also Adams v. Pinole Point Steel Co., No. C-92-1962 MHP, 1994 WL 442725, at *2 (N.D. Cal. May 18, 1994) (explaining that courts have "enunciated various tests, all of which are similar to the test set forth in Dowling").

Even where the self-critical analysis privilege applies, it protects "only subjective impressions and opinions, not objective facts." Reichhold Chems., Inc. v. Textron, Inc., 157 F.R.D. 522, 526 (N.D. Fla. 1994). See also Felder, 153 F. Supp. 3d at 225 (The self-critical analysis privilege "does not protect purely factual material appearing alongside self-critical analysis.").

**B.    Application**

Regardless of the precise formulation of the test to be applied, the internal review at issue here is the type of evaluation that the self-critical analysis privilege seeks to protect.[3] Partrederiet's internal investigation was completed after the accident occurred, and the purpose

---

document must have been prepared retrospectively as a component of a post-accident evaluation." Felder, 153 F. Supp. 3d at 225. Furthermore, courts generally only apply the privilege in "cases involving public health or safety." Id. (quoting Wade v. Wash. Metro. Area Transit Auth., No. 01–cv–334, 2006 WL 890679, at *5 (D.D.C. 2006)).

[3] Although the Court need not make a determination as to the standard to be applied, based on the facts of this case, the Court believes that the following are the appropriate factors to consider: (1) the document must be a critique submitted as part of a mandatory government report; (2) the document must have been prepared retrospectively as a component of a post-accident evaluation; (3) only subjective, evaluative materials are protected, and objective data is not protected; (4) the public must have a strong interest in preserving the free flow of the type of information sought; and (5) the document at issue must have been prepared with the expectation that it would be kept confidential.

4

was to pinpoint the root causes of the accident and to identify corresponding corrective actions and preventative measures that Partrederiet can take to avoid future incidents. Further, Partrederiet asserts that its investigation was required by an international treaty, the International Convention for Safety of Life at Sea 1974. In addition, Partrederiet represents that it has disclosed all the objective information and facts generated by its investigation, such as data from the BW GDF SUEZ BOSTON's Voyage Data Recorder, and has withheld only the self-analysis portions of its investigative report.

Several cases have recognized that the rationale for applying the self-critical analysis privilege is especially compelling where a post-accident safety review is concerned. For example, the court in Granger considered whether the privilege should apply to an internal post-accident review prepared by an investigation committee after an Amtrak electrician was injured at a maintenance facility. Granger, 116 F.R.D. at 508. The court determined that the sections of the report titled "Accident Analysis" and "Committee Recommendations" were protected by the self-critical analysis privilege, because "one of the primary purposes of the doctrine is to prevent a chilling effect on self-analysis and self-evaluation prepared for the purpose of protecting the public by instituting practices assuring safer operations." Id. at 510. The court explained that "[t]here is no question that the public has an interest in the institution of practices assuring safer operations of railroads," and reasoned that the "production of these portions of the report would tend to hamper honest, candid self-evaluation geared toward the prevention of future accidents." Id. Later, in Dowling, the Ninth Circuit quoted from Granger and noted that "[w]e do not disagree with this analysis." Dowling, 971 F.2d at 427. The court drew a distinction, however, between Dowling, which involved a voluntary, routine safety review conducted by a cruise ship operator, and a post-incident investigation, explaining that "the difference between pre-accident

safety reviews and post-accident investigations is an important one," since the "candid analysis of the causes of [a particular] accident[] is more likely to be stifled by a disclosure requirement than would the routine review of safety concerns." Id. at 425–27. The court also noted that the Federal Rules of Evidence "bar only evidence of *subsequent* remedial measures to prove negligence," based on the social policy rationale "of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Id. at 427 (citing Fed. R. Evid. 407 and quoting advisory committee note). Along the same lines, a federal court in Pennsylvania determined that a post-accident report generated by the Navy was also protected from disclosure by the privilege. See In re Petition of McAllister Towing & Transp. Co., No. 02-cv-858, 2004 WL 1240667, at *1 (E.D. Pa. May 7, 2004) (explaining that "the entire goal of the [internal] investigative process is to promote safety and to eliminate the possibility of a similar accident occurring in the future," which is "the basis for the [self-critical analysis] privilege, in the first place," and noting that the "privilege is based upon the concern that disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations or compliance with the law or with professional standards" (internal quotation marks and citation omitted)). Accordingly, the self-critical analysis privilege should apply to the evaluation at issue here.

Block Island Fishing argues that Partrederiet has not demonstrated that it will suffer actual harm from disclosing the investigative report. As discussed supra, however, the problem that the self-critical analysis privilege is meant to address is the disincentive against conducting future safety reviews if such material were required to be disclosed, rather than any immediate harm that the company would suffer from disclosing the report in this specific instance. Block Island Fishing also contends that, because Partrederiet is legally required to conduct post-

accident evaluations, disclosure of the report will not prevent Partrederiet from performing similar evaluations in the future. The fact that Partrederiet must continue to conduct these reviews, however, does not necessarily mean that it will have the incentive to be particularly thorough or candid in those evaluations. As the court in Webb recognized, the self-critical analysis privilege enhances compliance even where a report is legally required, because a company "must be encouraged to be candid and forthright in assessing" the practices at issue. Webb, 81 F.R.D. at 433; see also O'Connor, 86 F.R.D. at 217 (relying on Webb factors, including that report was prepared to satisfy government requirement).

Block Island Fishing also argues that the report should be disclosed because Partrederiet has not demonstrated that it was prepared with the expectation that it would be kept confidential, nor has it indicated that it has actually been kept confidential. See Dowling, 971 F.2d at 426 (recognizing "general proviso" that "no document will be accorded a privilege unless it was prepared with the expectation that it would be kept confidential, and has in fact been kept confidential"). The Court agrees that Partrederiet must demonstrate it has satisfied this requirement, so it shall file a status report within ten days of this order explaining whether the report was prepared with the expectation of confidentiality and whether it has been kept confidential. Given that the law concerning the self-critical analysis privilege is not well-established, the Court will not require Partrederiet to divulge the report merely because its initial brief does not make clear whether the report meets this requirement.

Lastly, Block Island Fishing asserts that Partrederiet's invocation of the privilege is overbroad because Partrederiet has not disclosed documentation concerning the specific facts and materials that were considered in the post-accident review. The Court agrees that Partrederiet must turn over these components of its report and allow its Rule 30(b)(6) deponent to testify

about all facts and observations considered in the investigation. See Granger, 116 F.R.D. at 510 (holding that portions of report titled "Cause" and "Contributing Factors" were discoverable). In addition, Block Island Fishing asserts that the privilege should only apply to the deposition testimony of Helge Drange, Partrederiet's designated Rule 30(b)(6) deponent, and should not preclude Block Island Fishing from seeking the testimony of other deponents concerning topics such as the cause of the accident. The Court agrees that this limitation is appropriate. See Hoffman v. United Telecomm., Inc., 117 F.R.D. 440, 442–43 (D. Kan. 1987) (holding that self-critical analysis privilege did not prevent plaintiff from seeking testimony concerning witness's personal opinion). Thus, Block Island Fishing may ask questions concerning the deponents' personal opinions or observations about the accident, but may not request information about the evaluative portions of the report at issue.

### C. Conclusion

Accordingly, Partrederiet's Motion for a Protective Order [ECF No. 56] is GRANTED, subject to the limitations set forth in this order. Partrederiet shall file a status report within ten days.

**SO ORDERED.**

June 4, 2018

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE